## IN THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| **MISTY ANNALYN MCCOOK,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| **v.** | )   **Case No. CIV-22-783-SM** |
| | ) |
| **KILOLO KIJAKAZI,** | ) |
| **Acting Commissioner of** | ) |
| **Social Security,** | ) |
| | ) |
| **Defendant.** | ) |

## <u>MEMORANDUM OPINION AND ORDER</u>

Misty Annalyn McCook (Plaintiff) seeks judicial review of the Commissioner of Social Security's final decision that she was not "disabled" under the Social Security Act. *See* 42 U.S.C. § 405(g). The parties have consented to the undersigned for proceedings consistent with 28 U.S.C. § 636(c). *See* Docs. 16, 17.

Plaintiff asks this Court to reverse the Commissioner's decision and remand the case for further proceedings because the Administrative Law Judge's (ALJ) residual functional capacity[1] (RFC) assessment lacks substantial evidentiary support and because the ALJ's consistency conclusions lack the same. Doc. 14, at 5-15. After a careful review of the administrative

---

[1]    Residual functional capacity "is the most [a claimant] can still do despite [a claimant's] limitations." 20 C.F.R. § 404.1545(a)(1).

record (AR), the parties' briefs, and the relevant authority, the Court affirms the Commissioner's decision. *See* 42 U.S.C. § 405(g).[2]

# I.   Administrative determination.

## A.   Disability standard.

The Social Security Act defines a disabled individual as a person who is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than [twelve] months." 42 U.S.C. § 423(d)(1)(A). "This twelve-month duration requirement applies to the claimant's inability to engage in any substantial gainful activity, and not just [the claimant's] underlying impairment." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (citing *Barnhart v. Walton*, 535 U.S. 212, 218-19 (2002)).

## B.   Burden of proof.

Plaintiff "bears the burden of establishing a disability" and of "ma[king] a prima facie showing that [s]he can no longer engage in h[er] prior work activity." *Turner v. Heckler*, 754 F.2d 326, 328 (10th Cir. 1985). If Plaintiff makes that prima facie showing, the burden of proof then shifts to the

---

[2]    Citations to the parties' pleadings and attached exhibits will refer to this Court's CM/ECF pagination. Citations to the AR will refer to its original pagination.

2

Commissioner to show Plaintiff retains the capacity to perform a different type of work and that such a specific type of job exists in the national economy. *Id.*

### C. Relevant findings.

#### 1. ALJ's findings.

The ALJ assigned to Plaintiff's case applied the standard regulatory analysis to decide whether Plaintiff was disabled during the relevant timeframe. AR 108-17; *see* 20 C.F.R. § 404.1520(a)(4); *see also Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2009) (describing the five-step process). The ALJ found Plaintiff:

(1)   had not engaged in substantial gainful activity from the amended alleged onset date of October 11, 2019, through her date last insured of June 30, 2021;

(2)   through the date last insured, had the severe medically determinable impairments of degenerative disc disease, cervical and lumbar spine status post lumbar fusion surgery, obesity, right shoulder labral tear and rotator cuff tendonitis status post acromioplasty and tendon repair, and right knee degenerative joint disease status post arthroscopy;

(3)   had no impairment or combination of impairments that met or medically equaled the severity of a listed impairment;

(4)   had the RFC to perform light work with occasional climbing of ramps and stairs, balancing, stooping, kneeling, crouching, and crawling; no climbing of ladders, ropes, and scaffolds; and frequent reaching overhead with the right upper extremity;

(5)   was unable to perform her past relevant work;

(6)     could perform jobs that exist in significant numbers in the national economy such as mailroom clerk, office helper, and merchandise marker; and so,

(7)     had not been under a disability from October 11, 2019 through June 30, 2021.

*See* AR 108-17.

## 2.     Appeals Council's findings.

The Social Security Administration's Appeals Council denied Plaintiff's request for review, *see id.* at 1-6, making the ALJ's decision "the Commissioner's final decision for [judicial] review." *Krauser v. Astrue*, 638 F.3d 1324, 1327 (10th Cir. 2011).

## II.     Judicial review of the Commissioner's final decision.

### A.     Review standard.

The Court reviews the Commissioner's final decision to determine "whether substantial evidence supports the factual findings and whether the ALJ applied the correct legal standards." *Allman v. Colvin*, 813 F.3d 1326, 1330 (10th Cir. 2016). Substantial evidence is "more than a scintilla, but less than a preponderance." *Lax*, 489 F.3d at 1084; *see also Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) ("It means—and means only—such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." (internal quotation marks omitted)). "Evidence is not substantial if it is overwhelmed by other evidence in the record." *Wall*, 561 F.3d at 1052.

This Court "consider[s] whether the ALJ followed the specific rules of law that must be followed in weighing particular types of evidence in disability cases, but we will not reweigh the evidence or substitute our judgment for the Commissioner's." *Lax*, 489 F.3d at 1084 (internal quotation marks omitted). Thus, "[t]he possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's findings from being supported by substantial evidence." *Id.*

"[T]he failure to apply proper legal standards may, under the appropriate circumstances, be sufficient grounds for reversal independent of the substantial evidence analysis." *Hendron v. Colvin*, 767 F.3d 951, 954 (10th Cir. 2014). But the failure to apply the proper legal standard requires reversal only where the error was harmful. *Cf. Shinseki v. Sanders*, 556 U.S. 396, 409 (2009) (placing the burden to show harmful error on the party challenging an agency's determination).

**B.  The ALJ's review of Plaintiff's subjective allegations.**

Plaintiff contends "[t]he ALJ's consistency analysis is directly contrary to law," relying on SSR 16-3p, 2016 WL 1119029 (Mar. 16, 2016). Doc. 14, at 10. The Court disagrees.

5

### 1.   ALJ's   Duty   to   Evaluate   Plaintiff's   Subjective Allegations

Social Security Ruling 16-3p provides a two-step framework for the ALJ to evaluate a claimant's subjective allegations. SSR 16-3p, 2016 WL 1119029, at *2 (Mar. 16, 2016). First, the ALJ must make a threshold determination as to "whether there is an underlying medically determinable physical or mental impairment[] that could reasonably be expected to produce an individual's symptoms, such as pain." *Id.* at *2. Second, the ALJ must evaluate the intensity and persistence of the claimant's symptoms to determine how much they limit the individual's ability to perform work-related activities. *Id.* At this second step, the ALJ will examine the objective medical evidence, the claimant's statements about his symptoms, information from medical sources, and "any other relevant evidence" in the record. *Id.* at *4. SSR 16-3p also directs the ALJ to consider the following seven factors in evaluating the intensity, persistence, and limiting effects of the claimant's symptoms:

- [d]aily activities;

- [t]he location, duration, frequency, and intensity of pain or other symptoms;

- [f]actors that precipitate and aggravate the symptoms;

- [t]he type, dosage, effectiveness, and side effects of any medication;

- [t]reatment, other than medication, an individual receives or has received for relief of pain or other symptoms;

- [a]ny measures other than treatment a claimant has used to relieve pain or other symptoms; and

- [a]ny other factors concerning an individual's functional limitations and restrictions due to pain or other symptoms.

*Id.* at *7. Finally, in evaluating a claimant's subjective statements, the ALJ must "provide specific reasons for the weight given to the [claimant's] symptoms, [which are] consistent with and supported by the evidence, and [ ] clearly articulated" for purposes of any subsequent review. *Id.* at *9.

### 2. The ALJ committed no error in its review of Plaintiff's subjective allegations.

In reviewing an ALJ's consistency analysis, such "determinations are peculiarly the province of the finder of fact, and [the court] will not upset such determinations when supported by substantial evidence." *Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995) (quoting *Diaz v. Sec'y of Health & Hum. Servs.*, 898 F.2d 774, 777 (10th Cir. 1990). Second, "findings as to [subjective reports] should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." *Id.* (additional alteration omitted).

According to Plaintiff, the ALJ only made conclusory findings and recited factors, without articulating specific reasons for her consistency findings.

7

Doc. 14, at 11-12. Plaintiff contends that the ALJ ignored "most" of the required factors, amounting to "no analysis at all." *Id.* at 14.

As the Commissioner points out, the ALJ need not expressly discuss every factor. Doc. 23, at 13; *see, e.g., Trujillo v. Comm'r*, 818 F. App'x 835, 843 (10th Cir. 2020).

Here, the ALJ discounted Plaintiff's consistency, considering her reports of "significant limitation in all areas of physical functioning," her testimony as to pain and ongoing pain and limitations in her hands, her reports of improvement after pain management therapies, her reports of significant improvement after her 2020 right shoulder surgery, and her apparent noncompliance with her doctor's recommendation for weight loss and conditioning. AR 111-14.

The ALJ noted Plaintiff reported no problems with personal care apart from reaching overhead. *Id.* at 111. She prepares meals, performs household chores, shops in stores, and cares for her son, who has ADHD and autism spectrum disorder. *Id.* at 111-12. The ALJ considered Plaintiff's third-party reports completed by her father and noted that he too stated she could perform these activities. *Id.* at 111. He also reported various limitations as to lifting and standing or sitting. *Id.*

8

The ALJ considered Plaintiff's testimony. *Id.* at 111-12. The ALJ "f[ou]nd it very likely that [Plaintiff] is more involved with childcare than her alleged limitations would permit." *Id.* at 112. The ALJ observed that Plaintiff's father— the only other adult living in the home—worked about forty hours each week. *Id.* In the end, the ALJ did not find Plaintiff's statements about the intensity, persistence, and limiting effects of her symptoms could reasonably be accepted as consistent with the medical evidence and other evidence of record. *Id.*

The ALJ considered Plaintiff's various pain management treatments for her spinal impairments. *Id.* at 113. These treatments included medication, periodic injections, and radiofrequency ablations. *Id.* The ALJ noted she was dismissed from continued narcotic drug management and then received injections, denervation therapy, and nonnarcotic pain medication. *Id.* The ALJ concluded that "[t]he longitudinal record does indicate that [Plaintiff's] pain symptoms are adequately controlled with treatment." *Id.*

She also reviewed the physical therapy sessions Plaintiff received in 2020 in response to a rotator cuff injury. *Id.* She also considered Plaintiff's obesity treatment. *Id.* Her doctors recommended thirty minutes of exercise five days a week. *Id.* Plaintiff's testimony reflects she spends most of her day sitting, or lying in bed watching television. *Id.* She stated she was compliant with her medications and stated she did walk thirty minutes a day, but not all at once.

*Id.* The ALJ also noted that Plaintiff's exercise stress test indicated she retained the capacity for light work and that Plaintiff did not appear compliant with her doctor's recommendations to exercise for weight loss and conditioning. *Id.*

The ALJ also noted Plaintiff's positive responses to various surgeries, her reports of "significant improvements after surgeries, injections, and radiofrequency therapy and that she unilaterally stopped taking prescribed pain management." *Id.* at 114.

The Court finds that the ALJ complied with SSR 16-3p. *See Steven v. Kijakazi*, No. 20-cv-00364-SH, 2022 WL 489319, at *4-5 (N.D. Okla. Feb. 17, 2022) (finding ALJ "linked his consistency findings to the evidence and provided clear and specific reasons for his determination" where ALJ considered, among other evidence, Plaintiff's "Plaintiff's non-compliance with Ms. Eaton's requests to provide a headache diary" (citing SSR 16-3p, 2017 WL 5180304)); *Wright v. Saul*, No. CIV-18-822-BMJ, 2019 WL 4145235, at *9 (W.D. Okla. Aug. 30, 2019) (affirming ALJ's conclusion that "Plaintiff's noncompliance with treatment weakened the credibility of her allegations" (citing SSR 16-3p, 2017 WL 5180304, at *9 ("[I]f the individual fails to follow prescribed treatment that might improve symptoms, we may find the alleged intensity and persistence of an individual's symptoms are inconsistent with the overall evidence of record.")) (quotations and alterations omitted).

10

The ALJ also thoroughly discussed Plaintiff's doctor's visits. AR 112-14. The ALJ discussed Plaintiff's daily activities set forth in her function reports and testimony. *Id.* at 111-12. In her evaluation, the ALJ provided evidentiary support in the form of specific page citations to the record, clearly articulated for this Court's review.

Based on the foregoing, the Court: (1) finds no error in the ALJ's evaluation of Plaintiff's subjective allegations and thus (2) concludes that substantial evidence supports the ALJ's evaluation of Plaintiff's reported symptoms and how much they limit Plaintiff's ability to do work-related activity.

## C.   Substantial evidence supports the ALJ's RFC assessment.

Plaintiff contends the ALJ's RFC assessment lacks substantial evidentiary support. Doc. 14, at 14. The Court disagrees.

APRN Kathryn Clarkson, who performed State consultative examination, gave the following opinion about Plaintiff's musculoskeletal system:

> Tenderness noted C2, C3, T3, T5 and lumbar spine to palpation. Paraspinal musculature tenderness noted C3, T5 and lumbar area to palpation. Pain in knee that radiates to hip with left leg SLR sitting and pain in knee without radiation in right leg SLR sitting. Pain in knee to hip with SLR-bilat lying down. . . . Claimant had to cross leg over other leg to get socks and shoes on.

11

*Id.* at 4 (quoting AR 1328). Nurse Clarkson also found ten findings of four-out-of-five, indicating weakness. *Id.*

Plaintiff says (without citation to the record) that Nurse Clarkson also noted "[l]imitations [] in back, neck, hips-bilat, shoulders bilat and dorsal flexion of left foot. Pain noted in hip and knee with flexion of knees bilat. Limited [activities of daily living]." *Id.* at 4, 7.

The ALJ considered Nurse Clarkson's April 2021 examination, noting it showed both of Plaintiff's hands continued to function adequately. AR 112. As to Nurse Clarkson's limitations findings and diagnoses, the ALJ limited Plaintiff to a reduced range of light work. Nurse Clarkson's diagnostic conclusions largely tracked the ALJ's findings of severe and nonsevere impairments. *Id.* at 1328, 109.

Plaintiff contends that none of her treating physicians issued an opinion stating she could perform light work—or, indeed, any level of work. Doc. 14, at 7. True, but none of her treating physicians issued *any* opinion about Plaintiff's functional limitations, nor does she suggest otherwise. *See Staheli v. Comm'r, SSA*, No. 22-4001, 2023 WL 6629891, at *3 (10th Cir. Oct. 12, 2023) ("[G]eneral statements about Ms. Staheli's prognosis were not a 'medical opinion' because they did not provide evidence concerning her ability to

perform the specific demands of work activities." (citing 20 C.F.R. § 404.1513(a)(2)))

She also argues, without citation to the record, that Nurse Clarkson's "mental examiner" findings "coincided with the resulting treatment" Plaintiff received. *Id.* But Plaintiff points to no objective medical evidence to support her own allegation that she "is severely disabled physically and mentally" beyond subjective reports and her receipt of "extreme measures of treatment" for pain. Doc. 24, at 1, Doc. 14, at 7.

The ALJ noted Plaintiff's conservative treatment for depression and generalized anxiety disorder, concluding these were nonsevere and had minimal impacts upon Plaintiff's ability to work. AR 109. The ALJ looked to the state agency medical consultants opinions at the initial and reconsideration levels that Plaintiff could perform light work. *Id.* at 114. The ALJ concluded these opinions were supported by the available medical evidence. *Id.* The ALJ then imposed further restrictions limiting Plaintiff to occasional postural activities and frequent overhead reaching to accommodate Plaintiff's subjective allegations of pain. *Id.* And, as discussed above, the ALJ discounted Plaintiff's consistency. *Id.* at 112.

The Court determines that sufficient evidence supports the RFC assessment.

**D.    Excessive absences.**

Plaintiff argues she faces excessive absences due to medical appointments, and she supports her argument by listing her appointments from May 2018 through March 2021. Doc. 14, at 9. She lists eighty-five appointments total, for an average of approximately twenty-nine appointments each year.[3] Plaintiff does not explain how long these appointments were or whether they could have been made during non-working hours, but she does argue that some lasted an entire day, and that she would miss more than one day a month on top of the many times she could not get out of bed or leave home during this same period. *Id.* at 10.

"[W]hether the number of medical appointments affects her ability to work is not an appropriate consideration for assessing her residual functional capacity because that determination considers only the functional limitations and restrictions resulting from medically determinable impairments." *Cherkaoui v. Comm'r of Soc. Sec.*, 678 F. App'x 902, 904 (11th Cir. 2017). The

---

[3]    In addition to list, Plaintiff says, "Clinics that the Plaintiff received services from during the above-period Plaintiff was involved in at least 110 appointments with either medical physicians or mental health professionals. Several of the appointments included anesthesia and medical injections. Those appointments would have lasted an entire day because of the medical source admonition that Plaintiff rest the day of the procedure with only light activities." Doc. 14, at 10.

Court finds Plaintiff's number of medical appointments does not reflect an inability to work because doctors' appointments are not a functional limitation or a restriction on her physical and mental capabilities. *See* SSR 96-8p, 1996 WL 374184. And there is no evidence these appointments have to be scheduled during work hours.

## III.  Conclusion.

Based on the above, the Court affirms the Commissioner's decision.

**ENTERED** this 20th day of November, 2023.

SUZANNE MITCHELL
UNITED STATES MAGISTRATE JUDGE

15